Good morning, and may it please the Court. I request the permission to reserve two minutes at the end for rebuttal. We'll try to help you, but you keep track. Thank you, Your Honor. In the era of the Internet, there are many amorphous places where those who engage in a variety of behaviors lurk. But just because they lurk there and maybe even talk about crimes or things which might be offensive to some folks, things they might do in the future, doesn't mean that they are there committing crimes. PreFriends, which is the Internet-related chat room which is at issue in this given case, was a digital meeting place. It was not a place where contraband was exchanged, which the government, contrary to what the affiant said, now concedes. The affiant in its affidavit, which led to the search warrant in this case, provides no proof at all that Mr. Martin at any time actually accessed contraband or had access to contraband. What at issue here was evidence relating to an Internet-related chat room, which is a text-based only system by which people can communicate. The affiant tried to make much more of this Internet-related chat room than it actually was. And it did it in a variety of ways by suggesting erroneously and falsely that child pornography could be found on the Internet-related chat room. The government now concedes that that is simply not the case. So what the affiant also did here, which I think is absolutely crucial and completely erroneous, is it tries to make much of the fact that Mr. Martin was a member of this PreFriends Internet-related chat room. There is nothing at all in the affidavit which actually proves that Mr. Martin was anything other than someone who was simply on the Internet-related chat room. So the affidavit attached to the search warrant indicates that the child pornography was circulated via members' use of FTP software. So although the chat room was text-based, I don't understand you to be disputing that files and movies and photos were exchanged amongst the members. Isn't that correct? Well, first, Your Honor, I would suggest that it was exchanged, but there's no proof. So you agree that those items were exchanged via this FTP software. Is that correct? Among some members, but there's nothing in the affidavit which actually establishes that Mr. Martin was a member of the group. The affidavit glosses over a variety of highly technical terms. What they establish in the affidavit is that a person, Zarman, was on the Internet-related chat room. They never establish that Zarman accessed pornography or in any fashion had access to pornography. Now, under this Kelly decision, this is, I guess, what concerns me the most about your argument. I mean, in this Kelly, United States v. Kelly, we held merely being the recipient of e-mails, which as the dissent says, you know, I get spam all the time, you know, inviting me to take part in various things. But merely being the recipient of this very specified and targeted e-mails was enough to raise the practical common sense inference that this person was involved with this type of pornographic information. Why doesn't the same sort of practical common sense inference arise, given that presumably you don't get onto one of these chat rooms by accident? Well, first of all, there's nothing in the affidavit which demonstrates that you can't get onto the chat room by accident. I think that's very important. I think that in Kelly He was there six times. All accidents? Well, Your Honor, there's an established What's established is that he was on December He was on one time, and then he was on several other sites on two different days. But there's no establishment that he was on the pre-friends on those other days. It was a single access of pre-friends. All right. So and there's no demonstration I mean, in Kelly, I think that the inference was there were nine e-mails that were sent back and forth, and those e-mails had attachments. But he was just a recipient. I mean, he got spam. There wasn't any indication that he had sent them or that he had opened them. But we said, you know, that's enough because it raises a common sense inference that they were targeted, they were specific. So we infer that he was involved in this activity. Well, but in that situation, the defendant, Kelly, actually was receiving child pornography, and there was child pornography which was found on his computer. And that's not something I think the court there was drawing the inference based on the fact that you don't typically receive it on this many occasions without having some type of solicitation of it, without accessing some type of place where you're trying to get a hold of child pornography. In the pre-friend situation, it's dramatically different because all the government can show, all the defiant can show is content of chatting, of talking, not talking to say, may I have child pornography or what do you have. In fact, there's no proof whatsoever of what it is that Mr. Zorman, who the government believes to be Mr. Martin, was actually saying. They just have proof that he was online chatting, talking only. The purpose of this chat room, the affidavit says the purpose of this chat room was to exchange child pornography. Well, that's a very important red herring I think the government throws out here. The government does say that that's what the purpose was, and that's according to Crowsell. But there's nothing on the internet relay chat room which says and demonstrates, and it says what the purpose actually is. The purpose could be a variety of different things. Unlike, say, the Gord case where Mr. Gord was accessing known child pornography websites and there were banner ads and flash-ups and things where it explained what it was all about. There's nothing in the affidavit whatsoever which demonstrates that Mr. Martin would have been on notice that the purpose of accessing this internet relay chat room was to exchange pornography. It could be simply to discuss it. And so we have an association issue. He's simply talking. There's no proof that he's on notice. Well, in Kelly there was no proof that he had solicited the e-mails, but we said the fact that the e-mails were there in his e-mail box was enough. Well, I think what's really different in Kelly is the number of times that e-mails were received by Kelly with the child pornography attached to it. And that's, I think, quite significant. If Mr. Kelly was simply receiving content from e-mails without child pornography attached to it, I don't think we would meet that standard. I respectfully suggest we wouldn't meet the standard of probable cause. Simply, you'd be talking about child pornography. You're talking about what's possibly out there. And, frankly, listservs, there's all kinds of content and discussions that are out there, be it a criminal defense lawyer's listserv, I'm sure a prosecutor's listserv. There's simply mentions of child pornography and child pornography cases. That doesn't mean that that's probable cause to search my computer or the government's computer or someone else's computer. We're talking simply about discussion, text. And I think that's a significant difference that in Kelly not only was there text, but there were actually images there. And one would think that if one was receiving an e-mail, a single e-mail with child pornography attached to it, that one would take steps to block that. And you could fall under the innocent recipient provisions of the law, which allow a single deception of child pornography. And you could take steps on your computers very easily to block all further e-mails from other sites. So I think it's the quantity and repetitive nature of receiving the e-mails which makes Kelly really different than the situation right here. You know, that purpose and aim is really, I think, quite significant. There's nothing that suggests that Mr. Martin in any way knew what the purpose or aim of the pre-Friends site was. And there's also this notion that the government throws out there, a fine throws out there, that getting on the pre-Friends site was exclusive. It was about members and things like that. There's nothing in the affidavit whatsoever which discusses the exclusivity of screening processes, of why that should be something which is really crucial. Yes, sir. Mr. Sherlock, as I read the affidavit, a portion of it, at ER 3435, if an individual has an interest in child pornography and has a computer with Internet access where child pornography images are readily available, based on the client's experience and training, there will be child pornography images stored on his computer. This is the affidavit of the investigating officer based on his experience. Why doesn't that supply common sense evidence that it's likely that he has child pornography on his computer? Well, there's a difference between interest in child pornography and interest in child pornography images. Certainly being involved in a case like this, I have an interest in child pornography. But you disagree with the investigator. But that doesn't mean that the magistrate had to eschew what the investigator was saying. What I would suggest, Your Honor, is that this isn't enough to tie to Mr. Martin himself, to demonstrate that he had an interest in images themselves. Well, the affidavit shows that he had access and communicated to six different sites, right? Sites where child pornography was discussed. Was discussed. Right. Not one, but six, right? Now, why doesn't that circumstantial evidence, together with the expert testimony and the affidavit formed by the investigator, provide probable cause that Mr. Martin had images on his computer? Because there's no information whatsoever as to what was going on when Mr. Martin accessed those sites. These sites, although there may be an interest in child pornography, there's nothing to say that you can't talk about what's going on in the Cubs game or the Ducks game or something like that. There's nothing that says that at the time that Mr. Martin was on those sites that any discussion was taking place about accessing or obtaining child pornography themselves. Plus, one can have perfectly innocent discussions about child pornography and not necessarily want to obtain child pornography. One can get out there and say one can, but the investigator, with his experience, thought that that was not probable. We're talking about is there circumstantial evidence or probable cause? Why isn't that sufficient? You may disagree with him. Sure. What I'd suggest, Your Honor, is that sort of broad statements with regard to experience and work in the field is not enough to tie to a specific search of a residence because of the importance of residence and privacy under the rights of the Fourth Amendment. And there needs to be something more specifically to suggest that Mr. Martin had an interest in obtaining images, something beyond just simply discussion. And there's nothing, unlike in Kelly, where there was a reception of child pornography images, nothing like Gord, where the obvious purpose of the website, which was displayed, was providing child pornography, which suggested that Mr. Martin had an interest in obtaining images. I suggest that's the main difference, Your Honor. Okay. So you say that unless there were some evidence that Mr. Martin had asked for child pornography to be sent him, there would be no probable cause? I think that that would be excellent evidence that would support probable cause. If he requested it, solicited it, tried to obtain it, there's simply nothing to suggest that he had done that whatsoever, done anything other than engage in text-based activity. Okay. We've taken you over your time, but we'll make sure you get a chance to respond. Thank you, Your Honor. It is Ms. Zusman, I think. Good morning. May it please the Court, Kelly Zusman, appearing on behalf of the United States. I'd like to pick up where Mr. Sherlock left off this morning with the suggestion that there had to be some evidence that Mr. Martin actually solicited child pornography. And that's precisely what this Court rejected in Kelly and Gord. In both of those cases, it was entirely possible that those people had accessed websites or received e-mails for purely legal purposes. But it wasn't probable. And the same is true here. And I think the key distinction that the defendant hasn't addressed is that this investigation started with an individual named Rolf Kreisel. And it was Mr. Kreisel who provided the information that Agent Hicks relied upon about this particular Internet relay channel. And it was a roundtable. They had changed the name specifically to avoid detection. And it was Mr. Kreisel who told members of the BKA that he personally had set up this Internet relay channel and that he had done so for one reason and one reason only. And that was to trade child pornography. You know, in Gord and Kelly, as the opposing counsel points out, there were images involved in both of those cases. Here, there was only the text in the chat room. Now, how do you make the link between text, which is not unlawful, and images, even though we know that Kreisel says the purpose is to exchange the photos and the movies? Well, we know from the BKA that they observed when they got online and assumed Kreisel's identity that they observed child pornography being downloaded by the members of that channel. Now, we know for Frank's purposes that it's only the veracity of the affidavit. And here, that's Special Agent Hicks that's challenged. So Hicks is relying upon what the BKA tells him about what they observed. And they observed members of that channel downloading child pornography. Also, in Gord, they're what... This is a... I'm not a very good technical person on this one. Downloading pornography from what? They meet on the Internet relay channel, and as I understand it, I'm also not a technical expert, they exchange it through the file sharing program, the FTP. So it's a technical distinction. They're not actually exchanging child pornography on the Internet relay channel. They are meeting, they are agreeing to exchange, and then they are using the FTP to do the actual exchange. And they're doing the exchange on a separate... A program. Yeah, okay. And as Kreisel explains, this roundtable Internet relay channel was a private members-only channel. This is not... Private members-only, can you get onto it without being a member? How do you become a member? You have to purchase the software in order to access it and then become a member. And then what Kraut... And do we have evidence at the time of the affidavit that he purchased this software? No, we don't. We do know that he had to have the software in order to access the channel. And how do we know that? We know that from the Hicks' affidavit, and also we've got that same information from the experts Lawson and Roloff, that in order to access these channels, you have to purchase this file sharing program. And you purchased that from whom? Computer software services. And then the evidence of your having purchased it, how do you present that evidence in order to get access to the whole roundtable? I'm sorry? How do you present evidence of your having purchased the software so that you're allowed access to the roundtable? I'm not entirely... Present your receipt from the Apple store and say, okay, I've bought it now. Oh, I see. You load the program onto your computer and then you contact, in this case you would have had to have contacted Krausel or one of the other founders of this Internet Relay Channel requested access. Okay. And as Krausel explains, in order for them to have trust in you, that you are really interested in the same thing they're interested in, you have to, on a regular basis, actually exchange child pornography. So, again, that's all of the information from Krausel that Agent Hicks is relying upon in his affidavit. The point about the file sharing and the software is that this is not the type of website or channel that you can access simply by doing a Google search. You actually have to take several steps to get there. So there's no possibility that you were there by happenstance. The other thing that we get from Krausel is, again, that this was set up for one purpose. It wasn't set up to talk about baseball statistics or cars or anything else. It was set up for the purpose of meeting and exchanging child pornography. So in terms of the text-based concern, the text was incidental to the primary purpose, which was the exchange of illegal child pornography. Now, the defendant was seen in Roundtable by members of the BKA. They traced his IP address to a residence in Salem, Oregon, and thereafter twice the same screen name, Czar Man, was seen on, as Judge Baya pointed out, six other Internet relay channels that were known to Agent Hicks for trafficking in child pornography. There was nothing false or misleading included in Agent Hicks' affidavit. The experts simply disagreed with many of the inferences that he drew, but it was both Agent Hicks, it was an assistant United States attorney reviewing his affidavit, a federal magistrate judge, and ultimately Judge Hagerty, all of whom concluded that that information was enough. It showed probable cause and a fair probability that evidence of child pornography would be found on Mr. Martin's computer. So I think Judge Hagerty was correct that there was probable cause here. And even if it is lacking, even if you decide that it's a little thin, I think we clearly have good faith, because it was run by an assistant U.S. attorney and a federal magistrate, all of whom felt like there was enough. There was, in fact, as we mentioned, substantial evidence of child pornography found on Mr. Martin's computer. So they were right. Unless there are any further questions from the panel, I'll submit. I'll only comment that if being right is sufficient retroactively to validate the search, Fourth Amendment is gone. Absolutely, Your Honor. And I'm not positing that what they found there justified what they did. I do think that the evidence that they had, that the defendant was linked to the name Zahrman, that Zahrman was in these channels. No, I'm not. I just couldn't resist when you said that they were right as if that was supporting your argument. Fair warning. Thank you, Your Honor.  We'll give you two. Thank you. Just a couple of brief comments, because the Court was generous earlier. There's nothing in the affidavit which suggests what the screening process was that allowed Mr. Martin to get onto pre-Friends or Roundtable. There is the only discussion in the preliminary aspects of the affidavit with regard to the word private, discusses that on these Internet-related channels there can be some private discussions. During the specific part relating to Crowsell, there's no discussion of what a private IRC channel is. There's no discussion of a screening process. There's no discussion that you can't find it through Google or how Mr. Martin would have found his way to this group or been invited to this group. There's nothing which suggests he had to do anything or jump through any particular hoops whatsoever. There's nothing that demonstrates that the aim or goal was public. This aim and goal stuff is all in Crowsell's mind. There's no way it can be said from this affidavit that was established that Mr. Martin had any knowledge or thoughts that could have in any way been demonstrated to support the probable cause. The software and where it can be accessed is in the affidavit. The government's just sort of laying some stuff out here. The fact of the matter is there's a discussion in our affidavit in terms of the broad availability of this type of software. Nothing suggests that it came from Crowsell. Crowsell had to approve it, the software being sold to Mr. Martin. The fact of the matter is this is a search warrant issued solely on text-based association, not actual possession, not attempted possession, not solicitation, not attempts to access. Text-based discussions, association only. And that's not enough under even the relaxed court standard. Thank you. Okay, thank you very much. Thank both sides for your helpful arguments. United States v. Martin is now submitted for decision. The next case on the argument calendar is United States v. Olander.
judges: Fletcher W. , Bea, Ikuta